**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                **Plaintiff(s),**           **CASE NUMBER: 04-80372**
                                                **HONORABLE VICTORIA A. ROBERTS**

**v.**

**D-1 CARL MARLINGA,**

                **Defendant(s).**
_____/

**ORDER GRANTING IN PART AND**
**DENYING IN PART THE GOVERNMENT'S**
**MOTION IN LIMINE TO EXCLUDE**
**EVIDENCE OF PRIOR GOOD ACTS**

**I.     INTRODUCTION**

      This matter is before the Court on the Government's Motion in Limine to Exclude

Evidence of Prior Good Acts.  Among other things, Defendant is charged with two

counts of bribery, in violation of 18 U.S.C. §666, and one count of wire fraud, in violation

of 18 U.S.C. §§ 1343 and 1346.  At the time Defendant allegedly took bribes, he served

in the elected position of Macomb County Prosecutor.

      For the reasons stated below, the Government's motion is **GRANTED IN PART**

and **DENIED IN PART**.

**II.    ARGUMENTS AND ANALYSIS**

      **A.     Arguments**

      To rebut bribery and wire fraud allegations, Defendant Carl Marlinga seeks to

introduce evidence of prior instances where, in his capacity as the elected Prosecutor,

he performed acts similar to those alleged in the Consolidated Second Superceding Indictment and received no bribes.  Defendant also seeks to introduce evidence that in two instances, he was offered and refused bribes.

The Government objects.  It asserts that: (1) specific instances of "good" conduct are not admissible as character evidence under FRE 405(b); (2) evidence of specific acts of "good" conduct is not admissible under FRE 404(b) to negate criminal intent for a particular offense; and (3) the probative value of good conduct evidence is substantially outweighed by the danger of jury confusion and would be inadmissible under FRE 403.  The Government also argues that the evidence is inadmissible under FRE 402, since it is sufficiently dissimilar from the charged conduct and is not relevant.

Defendant concedes that the proposed evidence is inadmissible as character evidence under FRE 405(b), since character is not an essential element of the offenses charged.  But, Defendant contends that it is admissible as "other acts" evidence under FRE 404(b) to rebut the Government's contention that he harbored criminal intent and accepted campaign contributions in exchange for official acts.  Defendant contends his "good acts" evidence demonstrates his innocent intent/state of mind, which would be a permissible use of 404(b) other acts evidence.

Defendant summarizes the expected testimony:

1.    *People v Rogalski*--A 17 year old female defendant (Rogalski) stabbed and killed an 18 year old man whom she claimed entered her home through a window and refused to leave.  Defendant was convicted in Macomb County Circuit Court of second degree murder and sentenced to 25-40 years.  Defendant's appellate attorney, Susan Smith, requested a meeting with Marlinga after the assistant prosecuting attorney assigned to the case opposed any grant of relief from the sentence imposed.  Ms. Smith had not previously met Marlinga or contributed to his campaigns. Marlinga met with Ms. Smith alone.  After hearing Smith's concerns,

2

Marlinga was troubled by the severity of the sentence.  He and Smith then agreed that he would confess error before the appellate Court and, on remand, the defendant would enter a guilty plea and accept a sentence between 1 and 5 years.

2.      Resentencing of James Jones--Jones, who was 16 years old, pled guilty to second degree murder (as an aider and abettor) of a janitor during a botched robbery attempt.  Jones did not inflict any of the janitor's wounds and he cooperated with the authorities to identify the person who inflicted the fatal blows.  The victim's family was represented at the plea and sentencing by Monsignor Anthony Tocco.    Judge Robert Chrzanowski sentenced defendant to parolable life; he would be eligible for parole in ten years.  Monsignor Tocco was consulted on the plea and sentencing.  He expected Jones to serve approximately 15 years.  However, the parole board repeatedly denied Jones parole, despite favorable letters from Monsignor Tocco and Judge Chrzanowski.  After Jones served 20 years, Judge Chrzanowski (then retired) advised Monsignor Tocco that the Macomb County Prosecutor, Marlinga, would have to agree to resentencing in order for Jones to be released.  Monsignor Tocco arranged a meeting with Marlinga and Judge Chrzanowski.  At the conclusion of the meeting, Marlinga agreed to look into the matter.  Shortly thereafter, Marlinga advised Monsignor Tocco that he would agree to a resentencing, and he consented to a motion subsequently filed on Jones' behalf.  Jones' motion was granted.  He was resentenced to time served.  Monsignor Tocco had not spoken with Marlinga prior to their first meeting, and he did not contribute to Marlinga's campaigns.

3.      Tabitha Larkin--Ms. Larkin, an African American, was charged with assault with intent to do great bodily harm after she stabbed Ronald Pomeroy, a Caucasian man.  The stabbing occurred at a residential complex, the Villager Lodge in Sterling Heights.  Larkin and her family were the only African Americans living there.  She claimed that she stabbed Pomeroy in self-defense after a racially-motivated assault on her family.  Pomeroy and his companions denied this accusation.  Larkin was represented by Miranda Massey.  Massey did not know Marlinga and had not contributed to his campaigns.  But, she contacted Marlinga and advised him that she believed the prosecution was racially motivated.  Marlinga agreed to observe the testimony at the preliminary examination.  After doing so, he agreed to dismiss the charges if Larkin passed a polygraph.  Massey engaged in discussions about the polygraph and all other matters subsequent to the preliminary examination solely with Marlinga, rather than the assistant prosecutor assigned to the case.  When Larkin passed the polygraph, Marlinga drafted and argued the motion to dismiss.  Over the objections of the Sterling Heights Police Department, Marlinga asserted at oral argument that he had reasonable doubts about

3

defendant's guilt.  Judge Mary Chrzanowski denied the motion (asserting that Marlinga had an obligation to prosecute if the police department believed it had a case).  Marlinga then directed the Macomb Chief of Appeals to file a motion for reconsideration.  The motion was granted by another judge after Judge Chrzanowski recused herself.

4.    William Reeves--Reeves pled to delivery of between 50 and 224 grams of cocaine.  Michigan law required one of two sentences: lifetime probation or 10-20 years imprisonment.  As part of the plea agreement, the assistant prosecuting attorney agreed to take no position at sentencing.  Reeves had a limited role in the drug transaction, no prior record, gainful employment, four children, record of service in the Navy and a drug problem.  The presentence department recommended imprisonment. When asked for her position, the assistant prosecuting attorney deferred to the recommendation.  Defendant was sentenced to 10-20 years. Reeves' lawyer, Henry Scharg, met with Marlinga alone and advised that he thought the assistant prosecuting attorney's statement constituted a violation of the plea agreement that she remain silent on sentencing. Scharg asked Marlinga to consent to a motion to withdraw the plea. Scharg knew Marlinga but does not believe that he had contributed any money to his campaigns at that time (although he has since made nominal contributions).  Marlinga appeared at the motion hearing and concurred with defendant's assertion that the assistant prosecuting attorney violated the agreement.

5.    Stephen Leszczynski--Leszczynski was charged with disturbing the peace after he yelled and disrupted a Warren City Council meeting.  Leszczynski was represented by Scharg.  Scharg filed a motion to dismiss and contacted Marlinga.  Scharg told Marlinga that he did not believe Leszczynski's conduct constituted disturbing the peace, and that his remarks were protected by the First Amendment.  Marlinga agreed to look into the matter and ultimately agreed to dismiss the case.

6.    Dale Camphouse--In April 2002, while Marlinga was running for Congress, Camphouse approached Marlinga on behalf of Howard Studabaker. Studabaker's son was serving a prison sentence for drug offenses. Studabaker's son had served 12 years of his sentence and Marlinga indicated that he would not oppose commutation of the sentence.  In an effort to get Marlinga to do more, Camphouse advised Marlinga that Studabaker could give him cash which would not have to be reported, in addition to the statutory maximum campaign contribution Studabaker had already given.  Marlinga terminated the conversation and reported it to the FBI.

7.    Jeremy Loew--Mr. Loew was Marlinga's campaign finance director.  He

4

would testify that, during the summer of 2002, he overheard Marlinga tell someone on the phone "I can't do that and I don't need your money." Marlinga was visibly upset after the call and said that he was talking to a priest whom he met at a fund-raiser earlier that summer. During that meeting, the priest told Marlinga that one of his parishoners was charged with a felony and would be subject to automatic deportation if convicted. And, if deported, repatriation would put the parishoner's life at risk. Marlinga promised to look into the matter. After confirming that conviction would require deportation, Marlinga decided to offer a reduced charge that would avoid automatic deportation. The priest then called and offered to contribute to and raise money for Marlinga's campaign in exchange for a lenient disposition in a case. Marlinga's response was the one overheard by Loew. Marlinga, nevertheless, reduced the charge because he felt it was the proper result.

The Government contends that all of the above evidence is Defendant's attempt to suggest that he had a propensity to conduct himself in a manner the general public would expect an elected prosecutor to act, and that this type of propensity evidence is prohibited by FRE 404(b).

### B.    Applicable Law and Analysis

The evidence Defendant seeks to admit falls into two categories: (1) the evidence proffered in numbers 1 through 5 involves instances when Marlinga took favorable action on behalf of defendants charged or convicted in Macomb County Circuit Court, and (2) the evidence in numbers 6 and 7 involves bribes offered to Marlinga which he allegedly rejected. Defendant asserts that both categories are admissible under FRE 404(b).

FRE 404(b) states:

> **(b) Other Crimes, Wrongs, or Acts.**--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the

5

> prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Although FRE 404(b) is typically used by the government against a defendant to introduce prior bad acts by the defendant, the parties agree that FRE 404(b) may be invoked by a defendant under proper circumstances to introduce prior "good" acts as exculpatory evidence. *See United States v Shavin*, 287 F.2d 647, 654 (7th Cir. 1961); *United States v Garvin*, 565 F.2d 519, 521-522 (8th Cir. 1977); *United States v Thomas*, 134 F.3d 975, 979 (9th Cir. 1998); *United States v Quattrone*, 441 F.3d 153, 191 (2nd Cir. 2006). *See also United States v Reifsteck*, 841 F.2d 701, 705 (6th Cir. 1988)(noting support for such a reading of FRE 404(b), but declining to decide the question). In the 404(b) case where the defendant attempts to introduce such evidence, that defendant is typically trying to prove that a third party committed the crime that he is charged with. This is often referred to as "reverse Rule 404(b) evidence."

The Sixth Circuit in *United States v Lucas*, 357 F.3d 599 (6th Cir. 2003), held that the same admissibility requirements which apply when "other acts" evidence is offered against a defendant, applies when a defendant wants to introduce other acts by third parties ("reverse 404(b) evidence").

In *Lucas*, defendant was convicted of possession with intent to distribute cocaine. The drugs were found in the rental car defendant was driving when she was stopped for a traffic violation. However, defendant's associate, Morrell Presley, had the car for five hours before defendant took it. Defendant claimed that she was unaware of the drugs. Her theory at trial was that Presley put them in the car unbeknownst to her. Consistent

6

with that theory, defendant sought to introduce evidence that Presley had a prior conviction for possessing and distributing cocaine.  The district court excluded the evidence, finding that it was more prejudicial than probative.  Defendant appealed.

The Sixth Circuit ultimately affirmed, finding that the district court's ruling was not an abuse of discretion.  In its analysis, the *Lucas* Court noted that when 404(b) evidence is offered by the defense, "the primary evil that may result from admitting such evidence against a defendant--by tainting his character--is not present in the case of 404(b) evidence used against an absent person."  357 F.3d at 605.  Nevertheless, the Court found that the prohibition against admitting evidence of prior bad acts for the sole purpose of showing that a person has a propensity for such conduct applies whether the defendant or the government seeks to introduce the evidence.  The Court held that the "standard" 404(b) analysis for admissibility applies to reverse 404(b) evidence.

The standard analysis employed in the Sixth Circuit is a three-part test:

> *First,* the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second,* if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third,* if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*U.S. v Trujillo*, 376 F.3d 593, 605 (6th Cir. 2004).

While this case is an atypical reverse 404(b) evidence case--Defendant seeks to introduce his own "good acts"--the Court finds that there is no material difference between the more typical cases in which defendants attempt to introduce 404(b) evidence and this one.  In both instances, defendant is attempting to introduce "other

7

acts" as exculpatory evidence.  Therefore, the Court finds that the *Lucas* Court's rationale applies in this case; Defendant's proffered evidence must meet the standard 404(b) admissibility requirements.

### i.     Proffered Evidence that Defendant Performed Favorable Acts on Behalf of Defendants on Other Occasions

### a.     Did the Other Acts Actually Occur?

The proffer in Defendant's response to the Government's motion in limine, and the proposed witnesses, are sufficient at this juncture for the Court to conclude that the other acts occurred.

### b.     Is the Other Act Evidence Probative of a Material Issue Other Than Character?

Although evidence of other specific acts is not admissible to show character in order to prove conduct, such evidence is admissible to show other facts that may be at issue.

A question to ask in the analysis, is whether the evidence the defendant seeks to introduce makes any consequential fact more or less probable?   A consequential fact may be something such as intent, knowledge or motive.  *See U.S. v Grubbs*, 11 F.3d 426, 432 (4th Cir 1993) (not an abuse of discretion to admit evidence of similar act relevant on issue of defendant's truthfulness).

Thus, this probe inextricably requires the Court to analyze proposed 404(b) evidence in the context of relevancy and the requirements of FRE 401:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

8

without the evidence.

A fact of consequence in this case is Defendant's criminal intent. For the two bribery charges against Defendant, the Government must prove that Defendant intended to be influenced or rewarded for favorable assistance in *People v Moldowan* and *People v Hulet*. For the wire fraud charge, the Government must prove that Defendant acted with the intent to defraud.

In the Consolidated Second Superceding Indictment, the Government asserts that it will make its requisite showing through several actions taken by Defendant in favor of the *Moldowan* and *Hulet* defendants which purportedly demonstrate that Defendant acted with the expectation that he would receive campaign contributions and fundraising activity in exchange for those acts. The Government alleges that Defendant: (1) drafted and filed a supplemental pleading which favored Moldowan on appeal; (2) assisted in the joint resolution of the Hulet's criminal and civil cases; and (3) met with Hulet's attorneys alone to discuss the civil and criminal cases, without the assistant prosecuting attorney assigned to the case. *See* Consolidated Second Superceding Indictment, Count I, ¶3; Count II, ¶3; Count III, ¶¶3, 5, 6.

The evidence Defendant proposes to admit, however, suggests that, prior to embarking on his bid for Congress, it was Defendant's normal practice as Prosecutor to extend the same type of courtesies to the defense in cases he deemed worthy. Indeed, Joseph Cozzolino, who served in the Macomb County Prosecutor's office as both Chief Trial Attorney and Chief Assistant under Defendant, testified at trial that: (1) Marlinga had an open door policy; (2) anyone inside or outside the office who wanted to contact Defendant usually could; (3) Defendant would speak to defense

9

attorneys without assistant prosecutors being present; (4) he would meet with crime victims; (5) he sometimes tried cases; and, (6) a few times he filed appellate briefs.

The summary of expected evidence from the Defendant set forth above in Paragraphs 1 through 5 evidences Defendant's innocent state of mind and lack of criminal intent. The evidence is indisputably probative of one of the primary issues here: why Marlinga handled the *Moldowan* and *Hulet* cases in the manner alleged.

Based on the foregoing, the Court finds that the proposed testimony is probative of a material issue other than character; Defendant has met the second prong of the Sixth Circuit's test.

### c.   Does the Probative Value Substantially Outweigh Any Prejudicial Effect?

Under FRE 403, even relevant evidence may be excluded if the probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The Government is correct that the proposed evidence introduces collateral matters which may prompt the Government to present rebuttal evidence. However, the Court is not persuaded by the Government's assertion that the danger of confusing the jury outweighs the probative value of the proposed evidence. The Government itself intends to introduce collateral evidence regarding *Moldowan* and *Hulet* to support its theory of the case. There is no apparent reason to expect that the jury will have any more difficulty navigating Defendant's evidence in support of his opposing theory than it will have in navigating the Government's evidence. The probative value of the evidence

10

offered by Defendant to disprove an element of the bribery and wire fraud charges far outweighs potential jury confusion.

For all of these reasons, the Court believes that Defendant has satisfied the FRE 404(b) requirements for admission of the evidence proffered in 1 through 5 above. His proposed evidence provides a plausible alternative to the Government's suggestion that he had criminal intentions in engaging directly with defense counsel, or on behalf of defendants--even in undertaking activity that his staff may have disagreed with. His proposed evidence is essential to developing this alternative theory.

The Government's motion with respect to these proffers is **DENIED**.

      **ii.**     **Proffered Evidence that Defendant was Offered Bribes on Other Occasions.**

The second category of evidence proffered--Defendant's alleged refusal of two bribes--is not admissible under FRE 404(b). Defendant has not shown that the evidence is "probative of a material issue other than character." *Trujillo,* 376 F.3d at 605. The evidence offered in the first category allows jurors to consider an alternate reason for Defendant's actions in connection with *Moldowan* and *Hulet*. The evidence in the second category, however, only suggests that Defendant is not inclined to accept bribes. This is the very type of propensity evidence explicitly prohibited under 404(b)-- "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

"[P]rior bad acts are generally not considered proof of any person's likelihood to commit bad acts in the future and . . . such evidence should demonstrate something more than propensity." *Lucas*, 357 F.3d at 605 (emphasis omitted). The same is true

with these two prior good acts Defendant seeks to admit.  The fact that Defendant allegedly refused bribes on some occasions does not make it more likely that he refused the bribes allegedly offered in this case.

Defendant has not persuasively established that the evidence in the second category is offered for any reason except to show his claimed propensity not to accept bribes.  Therefore, the Government's motion to exclude the evidence proffered in numbers 6 and 7 is **GRANTED**.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 15, 2006

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 15, 2006.

s/Linda Vertriest
Deputy Clerk